FILED
United States Court of Appeals
Tenth Circuit

January 17, 2020

Christopher M. Wolpert
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GEORGIANA CHAVEZ, as assignee
of Marlena Whicker,

     Plaintiff - Appellant,

    v.

ARIZONA AUTOMOBILE
INSURANCE COMPANY,

    Defendant - Appellee.

No. 18-1473

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:17-CV-02572-MEH)

---

Marc R. Levy (Matthew W. Hall, Levy Law PC, and DezaRae D. LaCrue and
Keith R. Scranton, Franklin D. Azar & Associates, P.C., Aurora, Colorado, with
him on the briefs), Levy Law PC, Englewood, Colorado, for Appellant.

Winslow R. Taylor, III (Kurt H. Henkel and Robert S. Hunger with him on the
brief), Tucker Holmes, P.C., Centennial, Colorado, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **HOLMES**, Circuit
Judges.

---

**TYMKOVICH**, Chief Judge.

---

While driving a car insured by Arizona Automobile Insurance Company, Marlena Whicker rear-ended a taxi and injured its passenger, Georgiana Chavez. Chavez sued Whicker in Colorado state court and won a default judgment when neither Whicker nor Arizona entered a defense. Whicker, unable to satisfy the judgment from the lawsuit, assigned her rights against Arizona to Chavez, who then filed this diversity suit against Arizona in federal court for failure to defend Whicker in the underlying state court action. Her theory was that Arizona had a duty to defend Whicker under Colorado law because Arizona knew that she was a driver covered under its policy.

The district court disagreed with Chavez and granted Arizona's motion to dismiss. Under Colorado law, Arizona was only required to defend Whicker if Chavez's complaint plausibly alleged Whicker was insured under the Arizona policy. We therefore reach the same conclusion as the district court and, exercising jurisdiction under 28 U.S.C. §§ 1291 and 1294(1), AFFIRM its dismissal of Chavez's case.

## I. Background

Whicker was driving a car owned and insured by another person in Aurora, Colorado, when she became distracted and rear-ended a taxi carrying Chavez. No one disputes that Whicker was at fault for the incident.

At the time of the accident, Whicker was living with the vehicle's owner but was not related to him. The vehicle was insured by Arizona, and both the vehicle and owner were named in the policy. The owner was one of three named insureds, but Whicker was not. Because she was not a named insured, the insurance policy did not automatically provide coverage for Whicker's use of the covered vehicle, but the policy did cover drivers of the vehicle who used it with a named insured's permission, making those users insured in their own right.

Prior to the state court proceedings, Arizona learned that Whicker lived with the named insured. In processing the claim against the vehicle's named insured, Arizona unsuccessfully attempted to contact him to determine if the claim fell within the insurance policy and whether Whicker was a permissive user of his vehicle. It attempted to contact him a second time, but his phone was not in service. Arizona then denied coverage because it could not verify that Whicker was actually a covered driver.

With her insurance claim unsatisfied, Chavez demanded a settlement with Arizona seeking the policy limits. Arizona again denied coverage. Chavez then sued Whicker in state court seeking damages for the accident and sent notice to Arizona of the suit. Neither Whicker nor Arizona defended the suit, and a default judgment was entered against Whicker for over $700,000. Whicker was unable to satisfy this judgment and assigned Chavez the right to pursue bad faith claims that

she had against Arizona in lieu of payment. Chavez then brought this suit as assignee of Whicker against Arizona in order to recover the damages and alleged that Arizona breached its duty to defend Whicker in the underlying suit.

Arizona moved to dismiss the suit against it, arguing the complaint did not trigger any duty on its part. The district court granted the motion because the complaint in the underlying suit never properly alleged that Whicker was insured under the policy.

## II.  Analysis

Chavez contends that Arizona breached its duty of good faith by failing to defend Whicker in the underlying state court proceeding. She argues Arizona had a duty to defend Whicker because it knew she might have used the covered vehicle with a named insured's permission and therefore might have been covered by the policy.

For the reasons discussed below, we disagree.

### A.  Standard of Review

We review the district court's interpretation of Colorado law and the relevant insurance policy de novo. *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 956 (10th Cir. 2011). We interpret Colorado law as its own Supreme Court has done. "Where the state's highest court has not addressed the issue presented, [we] must determine what decision the state court

would make if faced with the same facts and issue." *Rash v. J.V. Intermediate, Ltd.*, 498 F.3d 1201, 1206 (10th Cir. 2007) (quoting *Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006)).

### B. The Complaint Rule

Colorado law generally requires an insurer to defend its insured from any suit arising out of an incident covered by the relevant insurance policy. Automobile insurers like Arizona are therefore often required to defend insured drivers when those drivers are sued for damages resulting from an accident. But that general duty is triggered only if the policy is plausibly implicated.

Colorado has adopted the so-called "complaint rule" as a pleading requirement in such cases to determine when the policy is implicated and, by extension, when the duty to defend arises. In a case challenging the failure to defend, we apply the complaint rule to determine whether the insurer's duty to defend was properly triggered in the underlying litigation and therefore breached by the insurer's failure to provide a defense. *Pompa v. Am. Family Mut. Ins.*, 520 F.3d 1139, 1145 (10th Cir. 2008).

In the prototypical complaint rule case, a plaintiff sues a defendant named in an insurance policy. When that defendant's insurer fails to provide a defense, the defendant then sues the insurer for the failure or assigns his or her rights to do so to a victorious plaintiff. *See, e.g.*, *id.* The question in the suit against the

insurer is usually, then, whether the plaintiff's complaint alleged the sort of claim that would be plausibly covered by the insurance policy. And under the Colorado complaint rule, a complaint must allege facts that would plausibly yield insurance coverage. In short, to establish coverage for a specific tort, such as negligently causing injuries in an automobile accident, one must first plausibly allege that the tortfeasor is covered by the relevant policy.

The complaint rule focuses its inquiry on the complaint itself, and "we base the determination of an insurer's duty to defend on the allegations contained in the underlying complaint," to the exclusion of allegations made elsewhere. *Cotter Corp. v. Am. Empire Surplus Lines Ins.*, 90 P.3d 814, 829 (Colo. 2004) (en banc). That is, when deciding whether the complaint makes a claim covered by the policy, we look only within the four corners of the complaint and the four corners of the policy. *Id.* at 827 ("We have consistently held that an insurer's duty to defend arises solely from the complaint in the underlying action."); *Pompa*, 520 F.3d at 1145 ("Under the complaint rule, the insurer's duty to defend is determined by examination of solely the policy and the complaint."). Thus the complaint rule is sometimes referred to as the four-corners rule and, less commonly, the eight-corners rule.

If the complaint alleges a claim that would be covered by the relevant insurance policy, the duty to defend is triggered. The inverse is also true: if the

-6-

complaint *does not* allege on its face a claim that would be covered by the policy, then there is no duty to defend. The complaint rule can, therefore, be used offensively, as Chavez tries to use it here, to trigger a duty to defend, but it can also be used defensively to demonstrate that no duty was ever created. Even though it can be used in both ways, the complaint rule is not meant to allow insurers to escape a duty actually owed to an insured. Indeed, the Colorado Supreme Court stated that the rule "operates to cast a broad net, such that when the underlying complaint alleges *any facts* or claims that might fall within the ambit of the policy, the insurer must tender a defense." *Cyprus Amax Minerals Co. v. Lexington Ins.*, 74 P.3d 294, 301 (Colo. 2003). This court, too, has noted that the rule's purpose is not to limit insurer's duties to their insureds. *See Apt. Inv. and Mgmt. Co. (AIMCO) v. Nutmeg Ins.*, 593 F.3d 1188, 1194 (10th Cir. 2010) (noting that the rule "was never meant to be used by insurers as a shield in order to avoid a legitimate duty to defend"). Rather, the complaint rule is a mechanism meant to further the Colorado legislature's public policy rationale underlying the duty to defend. *See id.*; *Hecla Mining Co. v. N.H. Ins.*, 811 P.2d 1083, 1090 (Colo. 1991).

Still, some instances arise in which plaintiffs so thoroughly fail to properly allege any facts or claims that they do not trigger any duty, and insurers have successfully used the rule to avoid defending claims against insureds. The

Colorado Supreme Court has stated multiple times that an insurer can be forced to consider only the allegations in a complaint when avoiding the duty to defend. *Id.* at 1089 n.10, 1090; *Cotter*, 90 P.3d at 827. That court has also held that an insured cannot rely on extrinsic evidence to show that a duty to defend exists. *Compass Ins. v. City of Littleton*, 984 P.2d 606, 615–16 (Colo. 1999).

### C. Chavez's Complaint

With all of this in mind, we now turn to whether allegations in the underlying complaint, and not extrinsic evidence, plausibly demonstrated coverage for Chavez's injuries. To establish that the complaint did, it must have alleged (1) Whicker was covered in her capacity as a driver of the covered vehicle when she caused the accident and (2) the damage itself is the sort of damage covered by the insurance policy.

We can dispose of the second item quickly. The Arizona policy covers the sort of automobile collision presented in this case.

We turn, then, to the first item: whether the complaint properly and plausibly identified Whicker as an insured, i.e. as a person who could properly claim coverage for the type of incident that occurred. The policy includes as insureds, inter alia: (1) the named insureds or their family members and (2) "[a]ny person using [the named insureds'] covered auto with the express or implied permission of" the named insureds. App. at 52. It continues: "No person shall be

-8-

considered an insured if that person uses a vehicle without the permission of the owner or uses the vehicle as a converter." *Id*.

Because Whicker was not named in the relevant policy, simply mentioning her name would not automatically satisfy the requirement that the insured be identified as an insured. Still, Whicker could have been identified as an insured by a statement that her permissive use of the covered vehicle made her an insured for these intents and purposes. But Chavez's complaint did not directly allege that Whicker was an insured under the policy. In relevant part, the complaint only stated: "Defendant Marlena Whicker . . . is an individual and resident of Adams County, State of Colorado." App. at 33. It did not identify her as a covered driver. Nor did it state her address, which might have linked her to the named insured. Nowhere in the complaint did Chavez identify the vehicle that Whicker was driving such that she might have at least demonstrated the defendant was driving a covered vehicle. The return of service provided to Arizona also failed to identify the address at which both Whicker and the named insured resided. *See* App. at 36, 82. By naming a named insured, listing his address, or identifying a covered vehicle, Chavez might have raised the inference that Whicker was a permissive, insured user—an inference upon which Chavez relies heavily. At the very least, including the named insured's address might have put Arizona on notice as to which policy might be at issue.

Because of these deficiencies in the complaint, Chavez's suit against Whicker failed to create a duty for Arizona to defend her. Without extrinsic evidence, it is impossible to conclude from the complaint and policy alone that Whicker was an insured under the policy. And because an insured cannot rely on extrinsic evidence to show that a duty to defend exists, Chavez's complaint failed to trigger any duty under Colorado's complaint rule as the Supreme Court has explained it. *See Compass*, 984 P.2d at 615–16.

Even if a complaint fails to trigger a duty to defend under the traditional formulation of the Colorado complaint rule, we have on occasion considered whether an exception to the rule exists. Although Colorado courts have yet to make any exception to the complaint rule,[1] we applied a modified version of the complaint rule in two cases.

The first case was *Pompa v. American Family Mutual Insurance Co.*, 520 F.3d 1139 (10th Cir. 2008). In that case, the insured defendant, Pompa, had pleaded guilty to murder and was being sued by his victim's family for wrongful death. He requested that his insurer defend him in that suit, but the insurer refused, leaving Pompa without a defense. The court entered a default judgment against him much like the state court did in the suit underlying this one. Unable

---

[1] The Colorado Supreme Court did briefly weigh in on the possibility of an exception in *Hecla*, but it made no exception in that case. *See Hecla*, 811 P.2d at 1089 n.10.

to satisfy the judgment, Pompa sued his insurer and assigned the unsatisfied plaintiffs rights to the bulk of any proceeds from this second suit. Pompa argued that the Colorado complaint rule precluded his insurer from considering his guilty plea when deciding whether to defend him in the wrongful death suit because his conviction was not stated within the four corners of the complaint.

We rejected Pompa's argument and recognized that "an indisputable fact that is not an element of either the cause of action or a defense in the underlying litigation" can be used to deny the duty to defend. *Pompa*, 520 F.3d at 1147. Chavez suggests that *Pompa* recognizes an actual knowledge exception to the complaint rule by which an insurer with actual knowledge of any claim not stated in a complaint must still provide a defense based on that extrinsic claim. But *Pompa* does not recognize such a broad exception to the complaint rule, and we doubt that the Colorado courts would do so. Nor does Chavez point to indisputable evidence that shows Whicker was a covered driver.

Following *Pompa*, we also considered the complaint rule in *AIMCO v. Nutmeg Insurance Co.*, 593 F.3d 1188 (10th Cir. 2010). In that case, we considered "whether an insurer, in determining its duty to defend, can disregard its knowledge of facts outside an individual complaint but *contained in related complaints and known to the insurer*." *AIMCO*, 593 F.3d at 1193 (emphasis added). AIMCO had been a defendant in multiple suits arising out of a Ponzi

scheme orchestrated by an independent contractor in its employ. "Several of these suits alleged either AIMCO's direct involvement with the scheme or liability for the actions of AIMCO's independent contractor." *Id*. at 1192. AIMCO requested that its insurer, Nutmeg, provide a defense, but Nutmeg declined because, when read in isolation, the individual complaints did not trigger coverage under the relevant policies. AIMCO then brought suit to enforce Nutmeg's duty to defend. We concluded the rule would allow an insurer to consider facts it knows from parallel judicial proceeding in determining coverage. That scenario does not apply here because Arizona's actual knowledge of Whicker's status as a plausibly insured driver does not come from "parallel judicial proceedings" but from the insurance claims process.

To the extent Chavez invites us to broaden the exceptions that we recognized in *Pompa* and *AIMCO*, we reject the invitation. In *United Fire & Casualty Co. v. Boulder Plaza Residential*, we concluded that courts should be wary of making an exception when interpreting Colorado's complaint rule because "the responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it." 633 F.3d at 961 (quoting *Hardy Salt Co. v. S. Pac. Transp. Co.*, 501 F.2d 1156, 1163 (10th Cir. 1974)). We stated that this court should hesitate to recognize broad

exceptions when Colorado courts have not even recognized or ratified narrow ones:

> Neither the Colorado Supreme Court nor Colorado's lower courts has thus far recognized any exceptions to this rule, nor has either ratified the two exceptions recognized by the Court in *Pompa* and *AIMCO*. We are therefore wary of embracing a third, much broader exception to the plain language of Colorado's complaint rule absent clear authority from Colorado's highest court.

*Id*.

As neither *Pompa* nor *AIMCO* required Arizona to consider the extrinsic evidence, the complaint rule applies.

## III.  Conclusion

Chavez's complaint failed to trigger a duty for Arizona to defend Whicker in the underlying suit because it failed to state on its face any facts that could have even plausibly given rise to a claim covered by the Arizona policy. Moreover, the facts of this case do not avail Chavez of the exceptions to the complaint rule granted the insurer in *Pompa* or the insured in *AIMCO*.  And because our precedent compels us to decline to recognize another exception to Colorado's rule in this case, we will not find one.

We therefore AFFIRM the district court's order dismissing the case.

-13-